TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631
    Facsimile: (213) 894-0141
    E-mail:    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00108-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT KENNETH PETTY; DECLARATION OF KATHRYNNE N. SEIDEN; EXHIBITS 1-3 |
| v. | |
| KENNETH PETTY, | Hearing Date: 7/6/2022 |
| Defendant. | Hearing Time: 3:00 p.m. |
| | Location:    Courtroom of the Hon. Michael W. Fitzgerald |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kathrynne N. Seiden, hereby files its Sentencing Position for defendant Kenneth Petty.

    This position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further

//

//

evidence and argument as the Court may permit.  The government

respectfully requests the opportunity to supplement its position or

otherwise respond to defendant as may become necessary.

Dated: June 22, 2022              Respectfully submitted,

                                  TRACY L. WILKISON
                                  United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                        /s/
                                  KATHRYNNE N. SEIDEN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

1 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.    INTRODUCTION**

3       Having previously been convicted of attempted rape, defendant

4 knowingly failed to register as a sex offender upon moving to

5 California.  In September 2021, defendant pled guilty to one count of

6 failing to register as a sex offender, in violation of the Sex

7 Offender Registration and Notification Act ("SORNA"), 18 U.S.C.

8 § 2250(a).  Dkt. 54.  In his plea agreement, defendant reserved the

9 right to argue that he is a Tier II offender under SORNA.  Dkt. 49.

10 The government reserved the right to argue that defendant is a Tier

11 III offender.  <u>Id.</u>

12       In December 2021, the United States Probation and Pretrial

13 Services Office ("Probation") filed its Presentence Investigation

14 Report ("PSR") and Recommendation Letter.  Dkts. 56 (Recommendation

15 Letter) & 57 (PSR).  Assuming defendant was a Tier II offender,

16 Probation calculated a total offense level of 12 and a criminal

17 history category of II, for a Sentencing Guidelines range of 12 to 18

18 months' imprisonment and five years' supervised release.[1]  PSR ¶¶ 29,

19 39, 80, 83.  Although it identified no factors that would warrant a

20 downward variance or departure, Probation recommended that the Court

21 sentence defendant to six months' imprisonment -- only half the low-

22 end of his Guidelines range -- and a period of supervised release to

23 include six months' home confinement at his six-bedroom, seven-

24 bathroom home in Calabasas, which is located in a "gated affluent

25

26 ───────────────

27        [1] As explained in Section IV.A, <u>infra</u>, Probation's assumption
that defendant is a Tier II offender was based largely on his
classification as a "Level Two" offender under New York's evaluation
28 system, which is an independent rating system with levels that do not
correspond to SORNA's tiers.  PSR ¶ 21.

community" and includes a pool, a music studio, and a landscaped backyard.  Id. ¶¶ 60, 92-93.

The government contends that defendant is a Tier III offender under SORNA because his underlying attempted rape conviction fits squarely within the definition of attempted aggravated sexual abuse under 18 U.S.C. § 2241.  See United States v. Cabrera-Gutierrez, 756 F.3d 1125, 1133 (9th Cir. 2014).  Accordingly, defendant's base offense level is 16 and his total offense level is 13, for an advisory Guidelines range of 15 to 21 months' imprisonment.  See USSG §§ 2A3.5(a)(1), 3E1.1(b), 5A.  Moreover, because defendant falls in Zone D of the Sentencing Table, a period of home confinement is not an adequate substitute for a minimum term of imprisonment under the Guidelines, nor is it appropriate here.  See USSG § 5C1.1(f).  Instead, the government respectfully requests that the Court sentence defendant to a low-end Guidelines sentence of 15 months' imprisonment, five years' supervised release, a mandatory $100 special assessment, and a $55,000 fine.  A low-end Guidelines sentence properly balances the sentencing factors in 18 U.S.C. § 3553(a) by accounting for defendant's mitigating characteristics, while acknowledging the seriousness of the offense and providing just punishment and respect for the law.

**II.  STATEMENT OF FACTS**

In 1995, defendant was convicted of first degree attempted rape, under New York Penal Law § 130.35.  Dkt. 49 ¶ 11.  As a result of defendant's conviction, he was sentenced to 18 to 54 months' imprisonment and required to register as a sex offender under SORNA.  Id.  From 1999 to 2018, defendant completed annual registration documents in which he acknowledged, every year, his lifetime

2

registration requirements.  Id.  Defendant was notified repeatedly
that if he moved to another state, (1) he was required to notify New
York of his change of address, and (2) it was his responsibility to
follow any local, city, state, federal, or international laws
regarding registration.  Id.

Defendant moved to California in July 2019, but knowingly failed
to register as a sex offender in California.  Id.  During a traffic
stop in November 2019, defendant admitted that he had not registered
as a sex offender in California.  Id.

**III. PRESENTENCE INVESTIGATION REPORT**

Based on the facts above, Probation determined: (1) because
defendant is a Tier II offender under SORNA, his base offense level
is 14 under USSG § 2A3.5; and (2) because defendant accepted
responsibility for his conduct, he is entitled to a two-level
decrease under USSG § 3E1.1(a).  PSR ¶¶ 18-22.  Accordingly,
Probation calculated defendant's total offense level as 12.  Id.
¶ 29.  Probation also determined that defendant has three criminal
history points, for a criminal history category of II.  Id. ¶ 39.
Based on a total offense level of 12 and a criminal history category
of II, Probation calculated defendant's Guidelines range as 12 to 18
months' imprisonment and five years' supervised release.  Id. ¶¶ 80,
83.  Although Probation identified no factors that would warrant a
departure or variance below the Guidelines range, it recommended that
the Court sentence defendant to just six months' imprisonment (half
his low-end Guidelines sentence, or the equivalent of a three-level
downward variance).  Id. ¶¶ 92-93; Recommendation Letter at 1.
Probation also concluded that defendant should pay a $55,000 fine and
a mandatory $100 special assessment.  Id.

3

**IV.   ARGUMENT**

    **A.   Defendant's Base Offense Level Is 16 Because He Is a Tier III Sex Offender[2]**

The government respectfully disagrees with Probation regarding defendant's base offense level.  As permitted by the plea agreement (Dkt. 49 ¶ 13), the government contends that defendant's base offense level is 16 because SORNA required defendant to register as a Tier III offender.  USSG § 2A3.5(a)(1).  Under 34 U.S.C. § 20911, a Tier III offender includes someone whose prior offense (1) is punishable by imprisonment for more than one year and (2) is comparable to or more severe than sexual abuse, aggravated sexual abuse, or the attempt of either, as defined in 18 U.S.C. §§ 2241 and 2242.  34 U.S.C. § 20911(4).

The Ninth Circuit uses the categorical approach to determine a defendant's SORNA tier.  United States v. Cabrera-Gutierrez, 756 F.3d 1125, 1133 (9th Cir. 2014).  Under the categorical approach, a court must compare the statutory definition of the defendant's prior offense (here, rape, under New York Penal Law § 130.35) with the elements of the "generic" federal offense (here, sexual abuse or aggravated sexual abuse, under 18 U.S.C. §§ 2241 and 2242).  See id. In this case, defendant's attempted rape conviction makes him a Tier III offender if the New York law is defined more narrowly than, or

---

[2] In the PSR, Probation conflates defendant's designation by the New York State Board of Examiners of Sex Offenders -- which classified defendant as a level two sex offender -- with his tier level under SORNA.  PSR ¶ 21.  But New York's levels correspond to a defendant's risk of recidivism and are distinct from SORNA's tiers, which are based exclusively on the elements of a defendant's underlying conviction(s).  See New York Corr. Law § 168-l (McKinney).

has the same elements as, sexual abuse or aggravated sexual abuse (or the attempt of either) under 18 U.S.C. §§ 2241 and 2242.  See id.

Sexual abuse requires that a defendant either cause another to engage in a sexual act by threat or fear or to engage in a sexual act with a victim who is mentally or physically incapable of consent.  18 U.S.C. § 2242; see Cabrera-Gutierrez, 756 F.3d at 1134.  Aggravated sexual abuse requires that a defendant knowingly cause another person to engage in a sexual act by using force against the person or by threatening or placing the person in fear of death, serious bodily injury, or kidnapping.  18 U.S.C. § 2241.

In 1994, New York Penal Law § 130.35 defined rape in the first degree as follows:

> A male is guilty of rape in the first degree when he
> engages in sexual intercourse with a female:
>
> (1) By forcible compulsion; or
>
> (2) Who is incapable of consent by reason of being
> physically helpless; or
>
> (3) Who is less than eleven years old.[3]

New York Penal Law – Sexual Assault Reform Act, 2000 Sess. Law News of New York Ch. 1 (S. 8238, A. 11538) (McKinney's); see also United States v. Gilchrist, 2021 WL 808753, at *5 (M.D. Pa. Mar. 3, 2021) (stating elements of 1994 iteration).

Because rape under New York Penal Law § 130.35 includes alternative elements by which a person can be guilty, it is a divisible statute.  See Cabrera-Gutierrez, 756 F.3d at 1134.

---

[3] In 2000, New York amended its first degree rape statute to (1) criminalize women's conduct as well as men's; and (2) apply where the victim is less than 13 years old and the perpetrator is more than 18 years old.  New York Penal Law § 130.35.

1   Accordingly, the modified categorical approach applies.  Id.  Under

2   the modified categorical approach, the Court can look to certain

3   extra-statutory materials underlying defendant's attempted rape

4   conviction -- including the charging documents or the transcript of

5   defendant's plea colloquy -- to identify defendant's actual crime of

6   conviction and to then compare the elements of that crime with those

7   of federal sexual abuse and aggravated sexual abuse.  Id.; see also

8   Johnson v. United States, 559 U.S. 133, 144-45 (2010) (listing

9   documents a court can look to under the modified categorical

10  approach).

11      Here, those documents confirm that defendant pled to attempted

12  rape by the forcible compulsion prong of New York Penal Law

13  § 130.35(1).[4]  The complaint underlying defendant's conviction states

14  that defendant "engage[d] in sexual intercourse with a female by

15  forcible compulsion," "subject[ed] another person to sexual contact

16  by forcible compulsion," and "[r]estrained another person" when he

17  placed what the victim believed was a handgun into her back and

18  forced her to go upstairs into his bedroom, squeezed her neck, and

19  forced himself on her, while holding a knife against the victim's

20  stomach and telling her she could not leave.  Seiden Decl. ¶ 2 & Ex.

21  1 at USAO_000078.  Likewise, the indictment states that defendant

22  "engaged in sexual intercourse with a female by means of forcible

23  compulsion."  Id. at USAO_000076.  The transcript of defendant's plea

24  colloquy similarly reflects that defendant admitted that he

25

26      [4] The government provides these documents for the sole purpose
    of justifying its request that the Court classify defendant as a Tier
27  III offender under SORNA, as contemplated by the plea agreement.
    Dkt. 49 ¶ 13.  Nothing about these documents changes the government's
28  recommendation that defendant should be sentenced to a low-end
    Guidelines sentence.

"attempted to engage in sexual intercourse with [the victim], a female, by means of forcible compulsion."  Seiden Decl. ¶ 3 & Ex. 2 at USAO_000010.  Defendant also admitted that he had a knife and that he displayed it to the victim.  Id. at USAO_000011.  Thus, the documents underlying defendant's attempted rape conviction reflect that he pled guilty to rape by forcible compulsion.

Because rape by forcible compulsion fits squarely within the definition of aggravated sexual abuse under 18 U.S.C. § 2241 -- which prohibits rape by using force against the person or threatening or placing the person in fear of injury -- defendant's prior conviction qualifies him for Tier III under SORNA.  See Gilchrist, 2021 WL 808753, at *5 (applying the categorical approach to find that the defendant's conviction under the 1991 version of New York Penal Law § 130.35 qualified him as a Tier III sex offender under SORNA because "the New York statute criminalized a subset of the conduct criminalized by [SORNA] for aggravated sexual abuse under [] § 2241").

Because defendant is a Tier III sex offender under SORNA, his base offense level is 16.  See USSG § 2A3.5(a)(1)

**B.    Defendant Is Entitled to a Three-Point Reduction for Acceptance of Responsibility**

Because it calculated defendant's base offense level as 14, Probation adduced that defendant was not eligible for the third point for early acceptance of responsibility under USSG § 3E1.1(b).  PSR ¶ 28.  However, because defendant's base offense level is correctly calculated as 16, defendant qualifies for a third point for early acceptance of responsibility under that section.  See id. Accordingly, defendant's total offense level is 13.  With a total

7

offense level of 13 and a criminal history category of II,
defendant's advisory Guidelines range is 15 to 21 months'
imprisonment.

### C. Defendant Is Not Eligible for Home Confinement Because He Falls in Zone D

With a total offense level of 13 and a criminal history category
of II, defendant falls in Zone D of the Sentencing Table.  Under the
Guidelines, the minimum term -- here, 15 months -- shall be satisfied
by a sentence of imprisonment.  USSG § 5C1.1(f).  Accordingly, a
period of supervised release including home confinement is not an
adequate substitute for the minimum Guidelines term of imprisonment.

## V. 15 MONTHS' IMPRISONMENT AND FIVE YEARS' SUPERVISED RELEASE IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACCOMPLISH THE GOALS OF SECTION 3553(A)

The government respectfully requests that the Court sentence
defendant to a low-end Guidelines sentence of 15 months'
imprisonment, five years' supervised release, a $100 special
assessment, and a $55,000 fine.

### A. Nature and Circumstances of the Offense and Need for Sentence To Reflect the Seriousness of the Offense, Provide Just Punishment, and Promote Respect for the Law

Defendant has been completing sex offender registration
documents for nearly 20 years.  Dkt. 49 ¶ 11.  Over the course of two
decades, he was repeatedly warned that if he moved to another state,
it was his responsibility to follow any local, city, state, federal,
or international laws regarding registration.  Id.  In 2019,
defendant began a relationship with a celebrity and moved to
California.  PSR ¶¶ 11-12, 59-60.  Only then did defendant decide to
shirk his registration requirements, despite having had the benefit
of 20 years' worth of warnings.  Id. ¶¶ 11-12.  Defendant's sentence

should reflect that he knowingly disregarded the law.  18 U.S.C. § 3553(a)(1).

The Court should disregard defendant's attempt to backpedal on what he knew.  Specifically, defense counsel told Probation that defendant "was not advised that he would need to register under SORNA or that federal registration would be required if he moved to a different state" and that he "did not know of the requirements and believed that he was properly registered in New York."  Id. ¶ 16. These claims are at odds with the facts defendant admitted to in his plea agreement and at his plea colloquy -- namely, that he knowingly failed to register as a sex offender in the State of California, as required under SORNA.  See Dkt. 49 ¶ 11.  Nor do they make sense, given the annual warnings defendant received every year for 20 years. PSR ¶¶ 11-12.  In the face of these contradictions, the Court should disregard defendant's assertions to Probation and credit the sworn admissions he made at his change-of-plea hearing.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

In short, the timing of defendant's lapse in registration is concerning, given that it occurred when defendant began dating his wife, quit his job, moved to Los Angeles, and adopted an affluent lifestyle.  PSR ¶¶ 11-12, 59-60, 71.  The Court should impose a within-Guidelines sentence to impose on defendant the importance of his registration requirements and the need to follow the law, regardless of his changed socioeconomic status.  See 18 U.S.C. § 3553(a)(2)(A).  Moreover, while a within-Guidelines of 15 months' imprisonment and five years' supervised release will satisfy defendant's need for punishment and rehabilitation and afford

adequate deterrence to future crimes.  See 18 U.S.C. § 3553(a)(2).
In particular, given defendant's serious criminal history (PSR ¶¶ 31-
44) and past parole violations (id. ¶ 37), five years' supervised
release will be crucial to holding defendant accountable once he is
released.

Still, while a within-Guidelines sentence is appropriate, the
government recommends a sentence at the low end of that range in
light of various mitigating factors, including defendant's difficult
upbringing (as discussed in more detail in the next section).

**B.    History and Characteristics of Defendant and Need to Protect the Public**

Defendant 's history contains mitigating factors, including that
he was born to a single teenage mother who physically abused him.
PSR ¶¶ 52-56.  He was introduced to drug dealing at a young age.  Id.
And he was sent to an adult prison for over three years while still a
teenager.  Id.  Given defendant's challenging start in life, a low-
end Guidelines sentence of 15 months' imprisonment is appropriate.
18 U.S.C. § 3553(a)(1).

While a low-end sentence appropriately accounts for those
mitigating factors, other aspects of defendant's history and
characteristics warrant against a more lenient sentence, such as a
downward variance from the Guidelines or a substitution of home
confinement for imprisonment.[5]  In addition to his attempted rape
conviction, and as outlined in the PSR, defendant has numerous other
felony and misdemeanor convictions, including a conviction for first

---

[5] For the reasons set forth in Section IV.C, supra, home
confinement is also inappropriate because defendant falls in Zone D.

10

degree manslaughter.[6]  PSR ¶¶ 33-38.  As to that conviction, defendant told Probation that he committed the crime because he "confronted a drug dealer who physically assaulted his grandmother." Id. ¶¶ 37, 57.  But defendant did not mention his grandmother (or any purported defense of others) when he pled guilty to that crime; instead, he admitted that he shot the victim five times while crossing the street and that he did so with the intent to cause the victim serious physical injury.  Seiden Decl. ¶ 4 & Ex. 3 at USAO_000095-97.  Accordingly, in considering defendant's personal history and characteristics and the need to protect the public, a sentence at the low-end of Guidelines range appropriately balances defendant's difficult childhood with the need to protect the public given his criminal history.  See 18 U.S.C. §§ 3553(a)(1), (2)(C).

   **C.  Need for Sentence To Avoid Unwarranted Disparities**

   Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

---

   [6] Seven of these convictions -- including four felonies -- are not included in defendant's criminal history score because of their age or for other reasons.  PSR ¶¶ 33-38.

Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" can expect to receive a sentence between 15 and 21 months' imprisonment.  Defendant is entitled to the low end of that range, given his mitigating characteristics.  He is not, however, entitled to preferential treatment, whether in the form of a substitution of home confinement for imprisonment or otherwise. Especially where Probation has identified no justification for a downward variance or departure below the Guidelines range (PSR ¶¶ 92-93), defendant should receive the same sentence as other defendants who committed the same crime while in the same criminal history category.  See USSG § 5A.

**VI.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to a low-end Guidelines sentence of 15 months' imprisonment, five years' supervised release, a $100 special assessment, and a $55,000 fine.

1

## <u>DECLARATION OF KATHRYNNE N. SEIDEN</u>

2      I, Kathrynne N. Seiden, declare as follows:

3      1.    I am the Assistant United States Attorney assigned to this

4 case.  I have knowledge of the facts set forth herein and could and

5 would testify to those facts fully and truthfully if called and sworn

6 as a witness.

7      2.    Attached as **Exhibit 1** is a true and correct copy of

8 certified charging documents for defendant's 1995 attempted rape

9 conviction in the Supreme Court of the State of New York, Queens

10 County, Case Number 4521-94.

11      3.    Attached as **Exhibit 2** is a true and correct copy of the

12 transcript of defendant's change-of-plea hearing for defendant's 1995

13 attempted rape conviction in the Supreme Court of the State of New

14 York, Queens County, Case Number 4521-94.

15      4.    Attached as **Exhibit 3** is a true and correct copy of the

16 transcript of defendant's change-of-plea hearing for defendant's 2006

17 voluntary manslaughter conviction in the Supreme Court of the State

18 of New York, Queens County, Case Number 2852-03.

19      I declare under penalty of perjury under the laws of the Untied

20 States of America that the foregoing is true and correct and that

21 this declaration is executed at Los Angeles, California, on June 22,

22 2022.

23

24                                     _____
                                              /s/
                                       Kathrynne N. Seiden

25

26

27

28

**<u>Exhibit 1</u>**

SUPREME COURT OF THE STATE OF NEW YORK      NO FEE
QUEENS COUNTY
125-01 QUEENS BOULEVARD
KEW GARDENS, NY 11415


CERTIFICATE OF DISPOSITION INDICTMENT

DATE: 10/09/2019                    CERTIFICATE OF DISPOSITION NUMBER: 35075

PEOPLE OF THE STATE OF NEW YORK        CASE NUMBER:           4521-94
                    VS.                LOWER COURT NUMBER(S): 94Q033243
                                       DATE OF ARREST:        09/16/1994
                                       ARREST #:              Q94035395
                                       NYSID #:
                                       DATE OF BIRTH:                1978
PETTY,KENNY                            DATE FILED:            10/05/1994

_____
            DEFENDANT

I HEREBY CERTIFY THAT IT APPEARS FROM AN EXAMINATION OF THE RECORDS
ON FILE IN THIS OFFICE THAT ON 11/10/1994 THE ABOVE NAMED DEFENDANT WAS
CONVICTED OF THE CRIME(S) BELOW BEFORE JUSTICE  COOPERMAN,ARTHUR THEN A
JUSTICE OF THIS COURT.

ATTEMPTED RAPE 1st DEGREE PL  110-130.35 00 CF

THAT ON 04/05/1995, UPON THE AFORESAID CONVICTION BY PLEA  THE HONORABLE
COOPERMAN,ARTHUR  THEN A JUDGE OF THIS COURT, SENTENCED THE DEFENDANT
TO

ATTEMPTED RAPE 1st DEGREE PL  110-130.35 00 CF
IMPRISONMENT = 18  MONTH(S)  TO 54 MONTH(S)


SURCHARGE = $155 (PAID)




IN WITNESS WHEREOF,I HAVE HEREUNTO SET MY HAND AND AFFIXED MY
OFFICIAL SEAL ON THIS DATE 10/09/2019.

                                    _____
                                    QUEENS COUNTY CLERK
                                    COURT CLERK


Marijuana convictions under PL 221.05 or PL 221.10 are vacated, dismissed
and expunged as of August 28, 2019. The court system is in the process of
updating its records, but in the meantime, it is an unlawful discriminatory
practice unless specifically required or permitted by statute, for any
entity to make any inquiry about an expunged conviction or to use an
expunged conviction adversely, whether in any form of application or
otherwise, against such individual.

Pursuant to section 70.15 of the Penal Law, any misdemeanor sentence with
a jail term of "1 year", "12 months", or "365 days" is, by operation of
law, deemed to be a sentence of 364 days. Any Certificate of Disposition
indicating a jail sentence of "1 year", "12 months", "52 weeks", or
"365 days" for a misdemeanor conviction shall be interpreted as a sentence
of 364 days.

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K

C O U N T Y   O F   Q U E E N S

-----------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

AGAINST

XJ.    KENNY PETTY - VFO
       DEFENDANT
          94Q033243

-----------------------------------------

| OCT 5 1994

FILED:
INDICTMENT NO. 4521/94

| 130.35-1 | RAPE IN THE FIRST DEGREE (1) |
| 130.65-1 | SEXUAL ABUSE IN THE FIRST DEGREE (2) |
| 135.05 | UNLAWFUL IMPRISONMENT IN THE SECOND DEGREE (3) |
| 120.05-6 | ASSAULT IN THE SECOND DEGREE (4) |
| 265.01-2 | CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE (5) |

USAO_000075

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF RAPE IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT SEPTEMBER 16, 1994, IN THE COUNTY OF QUEENS, BEING MALE, ENGAGED IN SEXUAL INTERCOURSE WITH ███████████ A FEMALE BY MEANS OF FORCIBLE COMPULSION.

### SECOND COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF SEXUAL ABUSE IN THE FIRST DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT SEPTEMBER 16, 1994, IN THE COUNTY OF QUEENS, SUBJECTED ███████████ TO SEXUAL CONTACT BY TOUCHING THE VAGINA OF ███████████ WITH THE PENIS OF THE DEFENDANT BY MEANS OF FORCIBLE COMPULSION.

### THIRD COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF UNLAWFUL IMPRISONMENT IN THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT SEPTEMBER 16, 1994, IN THE COUNTY OF QUEENS, RESTRAINED ███████████

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS
INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF ASSAULT IN THE
SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT SEPTEMBER 16, 1994, IN THE
COUNTY OF QUEENS, IN THE COURSE OF AND IN FURTHERANCE OF THE
COMMISSION OR ATTEMPTED COMMISSION OF A FELONY, OTHER THAN A
FELONY DEFINED IN ARTICLE 130 OF THE PENAL LAW WHICH REQUIRES
CORROBORATION FOR CONVICTION, OR OF IMMEDIATE FLIGHT THEREFROM,
CAUSED PHYSICAL INJURY TO ███████████, WHO WAS NOT A
PARTICIPANT IN THE CRIME.

## FIFTH COUNT

THE GRAND JURY OF THE COUNTY OF QUEENS BY THIS
INDICTMENT, ACCUSE THE DEFENDANT OF THE CRIME OF CRIMINAL
POSSESSION OF A WEAPON IN THE FOURTH DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT SEPTEMBER 16, 1994, IN THE
COUNTY OF QUEENS, KNOWINGLY AND UNLAWFULLY POSSESSED A DANGEROUS
INSTRUMENT TO WIT: A KNIFE, WITH INTENT TO USE UNLAWFULLY
AGAINST ANOTHER.


DISTRICT ATTORNEY

CRIMINAL COURT OF THE STATE OF NEW YORK
PART APAR   COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW YORK

v.       9400332 **3**

KENNY PETTY

DEFENDANT

STATE OF NEW YORK
COUNTY OF QUEENS

POLICE OFFICER PAUL BOOTH OF 106 PCT, SHIELD 21635, TAX REG# #897055, BEING DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT SEPTEMBER 16, 1994 AT ABOUT 8:45 AM AT INSIDE 123-40 INWOOD STREET, COUNTY OF QUEENS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSES OF:
PL 130.35-1 RAPE IN THE FIRST DEGREE
PL 130.65-1 SEXUAL ABUSE IN THE FIRST DEGREE
PL 135.05 UNLAWFUL IMPRISONMENT IN THE SECOND DEGREE

IN THAT THE DEFENDANT DID:   BEING A MALE, ENGAGE IN SEXUAL INTERCOURSE WITH A FEMALE BY FORCIBLE COMPULSION; SUBJECT ANOTHER PERSON TO SEXUAL CONTACT BY FORCIBLE COMPULSION; RESTRAIN ANOTHER PERSON;

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE AS FOLLOWS:

DEPONENT IS INFORMED BY ████████████ THAT AT THE ABOVE TIME AND DATE AT THE VICINITY OF ROCKAWAY BOULEVARD AND INWOOD STREET, THE DEFENDANT PLACED A HARD CIRCULAR OBJECT TO COMPLAINANT'S BACK, AND THE OBJECT MADE A CLICKING SOUND.   DEPONENT IS FURTHER INFORMED THAT DEFENDANT THEN TOLD THE COMPLAINANT TO KEEP WALKING.

DEPONENT IS FURTHER INFORMED THAT DEFENDANT THEN FORCED COMPLAINANT TO WALK TO ████████ STREET, FORCED HER TO ENTER THE PREMISES AND TO GO UPSTAIRS INTO DEFENDANT'S BEDROOM BY PUSHING HER FROM BEHIND WITH THE HARD OBJECT WHICH COMPLAINANT BELIEVED WAS A HANDGUN.

DEPONENT IS FURTHER INFORMED THAT DEFENDANT THEN LAID HIS WEIGHT ON TOP OF COMPLAINANT, PINCHED HER SIDES AND SQUEEZED HER NECK CAUSING HER TO SUSTAIN BRUISES AND PAIN, AND THEN DEFENDANT FORCED HIS PENIS INTO HER VAGINA.

DEPONENT IS FURTHER INFORMED THAT DEFENDANT THEN BRANDISHED A KNIFE, HELD IT AGAINST COMPLAINANT'S STOMACH, AND TOLD HER SHE COULD NOT LEAVE, AND DEFENDANT THUS PREVENTED COMPLAINANT FROM LEAVING UNTIL COMPLAINANT STRUCK DEFENDANT WITH A PLASTIC BOTTLE AND ESCAPED.

USAO_000078

Defendant : PETTY, KENNY                                    Page 2

**FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW**

9/17/94
DATE                      SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF 9/17/94

SIGNATURE

940033233

## Exhibit 2

1

```
 1   STATE OF NEW YORK          :   QUEENS COUNTY
     SUPREME COURT              :   PART K-6
 2   ---------------------------------------x

 3   THE PEOPLE OF THE STATE OF NEW YORK,

 4             -against-                 INDICTMENT NO.
                                            4521-1994
 5   KENNETH PETTY,

 6                        Defendant.

 7   ---------------------------------------x
                      125-01 Queens Boulevard
 8                    Kew Gardens, N.Y.  11415

 9                    November 10, 1994

10                    MINUTES OF PLEA

11

12   B E F O R E:        HON. ARTHUR J. COOPERMAN
                            Supreme Court Justice
13
     A P P E A R A N C E S:
14
                        HON. RICHARD BROWN
15                      Queens County District Attorney
                        BY:  FRANK DEGAETANO, ESQ.,
16                      Assistant District Attorney,
                        Of Counsel, for the People
17
                        OFFICE OF ROBERT BAUM
18                      LEGAL AID SOCIETY - QUEENS COUNTY
                        Attorney for the Defendant
19                      BY:  JENNIFER MICHAELSON, ESQ.

20

21

22

23

24             Mary Ocskai
               Senior Court Reporter
25
```

1              THE CLERK:  Number 94521-94, Kenny Petty.

2              MS. MICHAELSON:  Jennifer Michaelson.

3              MR. DEGAETANO:  Frank Degaetano, Special

4    Victims Bureau.

5              THE CLERK:  Second call.

6              (Whereupon, the matter was recalled.)

7              THE CLERK:  Recalling number 9 on the

8    calendar, 94521-94, Kenny Petty.

9              Are you Kevin Petty?

10             THE DEFENDANT:  Yes.

11             MS. MICHAELSON:  Robert Baum by Jennifer

12   Michaelson.

13             MR. DEGAETANO:  Frank Degaetano for the

14   People.

15             MS. MICHAELSON:  At this time Mr. Petty

16   authorizes me to withdraw his previously entered plea of

17   not guilty and enters a plea of guilty to Penal Law

18   Section 110/130.35, Attempted Rape 1, a class C felony,

19   in full satisfaction of 4521-94 pending before the

20   Court.

21             THE CLERK:  Raise your right hand, sir.

22             Do you solemnly swear to answer truthfully all

23   questions put to you so help you God?

24             THE DEFENDANT:  So help me God.

25             THE COURT:  What is your name?

MO

USAO_000005

Proceedings                                                    3

1              THE DEFENDANT:  Kenny Petty.

2              THE COURT:  Do you understand English?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Is that your lawyer Miss

5       Michaelson standing next to you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you hear and understand the

8       application and guilty plea she made to the Court a few

9       moments ago in your behalf?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Have you had a full and complete

12      opportunity to discuss your plea in this case with your

13      lawyer, and at the end of that discussion, did you ask

14      her to make this application for you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you now wish to withdraw your

17      prior plea of not guilty and plead guilty at this time

18      to the charge of Attempted Rape in the First Degree,

19      under the first count of the indictment, to cover all

20      remaining charges against you in this indictment?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you pleading guilty because

23      you are, in fact, guilty?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Has anybody threatened you,

USAO_000006

1    coerced you or forced you to plead guilty?

2              THE DEFENDANT:  No.

3              THE COURT:  Are you pleading guilty

4    voluntarily?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that you have a

7    constitutional right to a speedy trial before a jury on

8    these charges, and that the People have the burden of

9    proving these charges beyond a reasonable doubt to a

10   unanimous jury, and that the Court is prepared to begin

11   that trial shortly if you so desired.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you further understand if you

15   proceeded to trial you would have the right to confront

16   the witnesses against you.  Further, your lawyer would

17   have a full opportunity to cross-examine these

18   witnesses, and you would also have the right to present

19   witnesses in your own behalf.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you had the opportunity to

23   discuss with your lawyer any defenses you may have to

24   the charges brought against you?

25             THE DEFENDANT:  Yes.

USAO_000007

Proceedings                                    5

1          THE COURT:  Do you realize by pleading guilty

2    to a felony today, this plea could serve as the basis

3    for an enhanced sentence in the future should you commit

4    and be convicted of a felony in the future?

5          THE DEFENDANT:  Yes.

6          THE COURT:  If you proceed to trial you could

7    not be compelled to incriminate yourself in any way, and

8    that would include not being compelled to take the stand

9    and testify against yourself, although you would have

10   the right to take the stand in your own behalf at the

11   time of trial if you wished to do so.

12          Do you understand all of that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you now wish to waive all these

15   rights and plead guilty to the charge of Attempted Rape

16   in the First Degree?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand your guilty plea

19   is the same as if you had a trial and were found guilty?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Did your lawyer tell you that

22   there was a discussion among the attorneys and the Court

23   concerning the possible disposition and sentence in this

24   case?

25          THE DEFENDANT:  Yes.

MO

1          THE COURT:  Did she further tell you that the

2    Court indicated that it would give favorable

3    consideration to imposing a sentence of incarceration of

4    not less than one and-a-half, no more than four

5    and-a-half years, if after reading the probation report

6    the Court is of the opinion that such sentence would be

7    in the interest of justice?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Did your lawyer also tell you if

10   after reading the probation report the Court comes to

11   the conclusion that the interest of justice require that

12   you be given a longer sentence, then you will be given

13   the choice of accepting that longer sentence or

14   withdrawing this plea of guilty without prejudice.

15          That is, if the Court can't keep the promise

16   with respect to the sentence, you could take back your

17   plea and go on trial.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Has anybody made any promises

21   other than what I have told you?

22          THE DEFENDANT:  Yes -- no.

23          MS. MICHAELSON:  There's one other thing I did

24   indicate to him, that he is YO eligible and while the

25   Court has said it's not inclined to grant him YO

Proceedings                                                7

1      treatment, that the Court would consider it on the day

2      of sentencing, and if the Court after reading the

3      probation report and any other pending documents thought

4      it would be appropriate, the Court would sentence him to

5.     YO if it felt it was appropriate.

6                  THE COURT:  Keeping in mind, of course, the

7      Court does, while it can consider the probation report,

8      it also considers the statements made before the Court

9      at the time and all pertinent factors dealing with

10     sentence.

11                 It's not limited to any particular source, but

12     you're correct, the Court will consider that application

13     as it must, as it's required by law, at the time of

14     sentence.

15                 Mr. Petty, do you still wish to plead guilty?

16                 THE DEFENDANT:  Yes.

17                 THE COURT:  By pleading guilty, are you

18     admitting that on or about September 16, 1994, in the

19     County of Queens, you attempted to engage in sexual

20     intercourse with J███████ H████, ██████████, a female by

21     means of forcible compulsion?

22                 Is that correct?

23                 THE DEFENDANT:  Yes.

24                 THE COURT:  Where did this incident take

25     place?

MO

USAO_000010

1           THE DEFENDANT:  In my grandmother's house.

2           THE COURT:  Where is that located?

3           THE DEFENDANT:  ████ █████Street.

4           THE COURT:  Is that in the County of Queens?

5           THE DEFENDANT:  Ah hah.

6           THE COURT:  Say yes or no.

7           THE DEFENDANT:  Yes.

8           THE COURT:  And, what happened?

9           THE DEFENDANT:  She was in my house, we had

10     sex.

11          THE COURT:  Do you recall moments ago you

12     indicated you attempted to engage in sexual intercourse

13     by means of forcible compulsion?

14          So, with respect to that aspect of what

15     occurred, did you have any weapon at that time?

16          THE DEFENDANT:  A knife.

17          THE COURT:  You had a knife?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And, did you display it --

20          THE DEFENDANT:  Yes.

21          THE COURT:  -- to her, before you had sexual

22     intercourse with J████ █ ████P

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.

25          Is the plea acceptable to the People?

MO

USAO_000011

Proceedings                                                9

1         MR. DEGAETANO:  Plea is acceptable.

2         I've also turned over to defense a copy of a

3    Waiver of Right to Appeal which is a condition of the

4    People's offer.

5         MS. MICHAELSON:  We have executed the Waiver

6    of Right to Appeal and are handing it to the Court at

7    this time.

8         THE COURT:  Do you understand in every case a

9    defendant has a right to appeal?

10        Do you understand that?

11        THE DEFENDANT:  Yes.

12        THE COURT:  In this case you wish to waive

13   your right to appeal?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Have you discussed this with your

16   attorney?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Has anybody threatened you,

19   coerced you, or forced you to waive your right to

20   appeal?

21        THE DEFENDANT:  No.

22        THE COURT:  You do so voluntarily?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Okay.  Do you understand by

25   waiving your right to appeal, you waive your right to

USAO_000012

1    have somebody appointed to represent you in an Appellate

2    Court in the event you cannot afford an attorney, and

3    that person would submit a brief or argue in your behalf

4    before an Appellate Court on any of the issues relating

5    to your conviction and sentence?

6                    Do you understand that?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  And that by waiving your right to

9    appeal you waive your right to have that done?

10                   Do you understand that?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Defendant executed a Waiver of

13   Right to Appeal form, his attorney has signed it, the

14   Court has affixed its signature as well.

15                   This will remain in the file pending sentence

16   in the case.

17                   The Court will except the plea.

18                   THE CLERK:  Is your true name Kenneth Petty?

19                   THE DEFENDANT:  Kenneth Petty.

20                   THE COURT:  What is your date of birth?

21                   THE DEFENDANT:  ███/78.

22                   THE COURT:  Your current address?

23                   THE DEFENDANT:  ████ █████ ████.

24                   THE CLERK:  Where is that?

25                   THE DEFENDANT:  ██████ █████.

MO

```
 1              THE CLERK:  Date for sentence.

 2              THE COURT:  November 29th?

 3              MS. MICHAELSON:  Fine.

 4              THE CLERK:  November 29th.  Defendant's

 5      remanded for sentence.

 6                    *         *         *

 7         I, Mary Ocskai, Senior Court Reporter, hereby

 8    certify that the foregoing is a true and correct transcript

 9    of the within proceedings.

10

11

12              _____

13              Mary Ocskai
                Senior Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

MO

USAO_000014

## Exhibit 3

1   SUPREME COURT OF THE STATE OF NEW YORK

2   COUNTY OF QUEENS:   CRIMINAL TERM:   PART   TAP B

3   --------------------------------------x
    THE PEOPLE OF THE STATE OF NEW YORK,
4
                 -against-                    Indictment No.
5                                                2852/03
                                                   PLEA
6   KENNETH PETTY,
                         Defendant(s).
7   --------------------------------------x
                              March 2, 2006
8                             125-01 Queens Boulevard
                              Kew Gardens, New York 11415
9

10  B E F O R E:

11             THE HONORABLE RANDALL T. ENG

12  A P P E A R A N C E S:

13             THE HONORABLE RICHARD A. BROWN
               DISTRICT ATTORNEY
14             Queens County
               BY:  JOHN KOSINSKI, ESQ.,
15                  Assistant District Attorney

16             ROBERT DIDIO, ESQ.,
               Attorney for the Defendant
17

18

19

20

21

22

23

24
                              Nancy Samms,
25                            Senior Court Reporter

USAO_000090

2

Proceedings

```
 1            THE COURT CLERK:  This is number nine, case on
 2    trial, indictment 2852 of 03, Kenneth Petty, who is present
 3    before the Court.
 4            Appearances, please.
 5            MR. DiDIO:  Robert DiDio, 80-02 Kew Gardens Road.
 6            MR. KOSINSKI:  Office of Richard A. Brown by John
 7    Kosinski.
 8            THE COURT:  Good morning, everyone.
 9            MR. DiDIO:  Good morning.
10            THE COURT:  Let's bring in the panel and start
11    jury selection, please.
12            THE COURT OFFICER:  Prospective jurors entering
13    the courtroom.
14            THE COURT CLERK:  Would you all please stand and
15    raise your right hands.
16            (Whereupon, the panel was sworn and jury selection
17    commenced, which was recorded but not transcribed herein:)
18            THE COURT CLERK:  Recall of number nine on the
19    calendar, Kenneth Petty, present with his attorney,
20    Mr. DiDio, and Mr. Kosinski is also present.
21            MR. DiDIO:  Judge, may I step out in the hall?  I
22    believe his wife is outside.
23            THE COURT:  Yes, of course.
24            (Whereupon, there was a brief pause in the
25    proceedings.)
```

USAO_000091

Proceedings

1         MR. DiDIO:  Thank you, Judge.

2         (Defendant and counsel confer.)

3         THE COURT:  All right.  The defendant can remain

4  seated during this process.

5         What's your application, Mr. DiDio?

6         MR. DiDIO:  Judge, after consulting with my client

7  in regards to this matter, he is prepared to withdraw his

8  previously entered plea of not guilty and enter a plea of

9  guilty to manslaughter in the first degree, a B violent

10  felony -- I'm not sure under what count.  I don't have the

11  indictment.

12         THE COURT:  It should be the first count of the

13  indictment, intentional.

14         MR. KOSINSKI:  That's correct.

15         MR. DiDIO:  Under count one.

16         THE COURT:  Swear the defendant, please.

17         (Defendant sworn.)

18         THE COURT CLERK:  Is your true name Kenneth Petty?

19         THE DEFENDANT:  Yes.

20         THE COURT CLERK:  Date of birth?

21         THE DEFENDANT:  ███78.

22         THE COURT CLERK:  Address?

23         THE DEFENDANT:  ███████Street.

24         THE COURT CLERK:  Are you a United States citizen?

25         THE DEFENDANT:  Yes, ma'am.

USAO_000092

4

Proceedings

1              THE COURT:  Thank you.

2              Mr. Petty, I'm going to ask you questions about

3    this guilty plea.  You have to answer each one.  Make sure

4    that you keep your voice up.

5              Is Mr. DiDio, the attorney seated next to you,

6    your lawyer for this case?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT CLERK:  Have you talked to him about

9    this case and about this guilty plea?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT CLERK:  Mr. DiDio has asked permission

12   of the Court to withdraw your plea of not guilty and

13   instead enter a plea of guilty under the first count of the

14   indictment to the lesser included offense of manslaughter

15   in the first degree, which is, in law, a class B violent

16   felony, to satisfy all of the charges contained in this

17   indictment number 2852 of 2003.

18             Is it your wish to plead guilty to manslaughter in

19   the first degree?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Are you doing so freely and

22   voluntarily?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  I have to advise you of the following,

25   and that is, on the charges contained in this indictment,

USAO_000093

Proceedings

1    the law provides that you could have a complete jury trial

2    by a jury of 12 persons.  In fact, we were in the process

3    of doing just that, choosing a jury.

4         At such trial, you would have the right to

5    confront and examine the People's witnesses; you could

6    examine and question any other evidence offered by the

7    People; you would have the right to testify for yourself,

8    although you could not be made to do so.  In addition, you

9    could call your own witnesses and present other matters in

10   your defense.

11        By pleading guilty, you are giving up the right to

12   have a complete jury trial and the legal result is the same

13   as though you had a finished trial and been found guilty of

14   manslaughter in the first degree.

15        Is that understood?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Let me have the indictment, please.  I

18   will go over with you now the charges contained under the

19   first count in which you are pleading guilty to, the lesser

20   included offense of manslaughter in the first degree.

21        It's charged that on or about April 27, 2002 in

22   Queens with intent to cause the death of L████ R██████

23   you caused the death of L███ R██████ by shooting him

24   with a deadly weapon.

25        Is it true that this happened on April 27, 2002?

NS

6

                                Proceedings

 1                    THE DEFENDANT:  Yes, sir.

 2                    THE COURT:  At what time of the day or night

 3          approximately did this happen?

 4                    THE DEFENDANT:  1:00.

 5                    THE COURT:  Would that be in the morning or in the

 6          afternoon?

 7                    THE DEFENDANT:  Afternoon -- in the morning.

 8                    THE COURT:  You are saying sometime after

 9          midnight?

10                    THE DEFENDANT:  Yes, sir.

11                    THE COURT:  On what street in Queens did this

12          happen?

13                    THE DEFENDANT:  116th.

14                    THE COURT:  Is it true that you shot I████

15          R██████?

16                    THE DEFENDANT:  Yes, sir.

17                    THE COURT:  What kind of weapon did you use to

18          shoot I████  R██████?

19                    THE DEFENDANT:  Nine-millimeter.

20                    THE COURT:  How many times did you fire at I████

21          R██████?

22                    THE DEFENDANT:  I don't know.

23                    THE COURT:  Was it once or more than once?

24                    THE DEFENDANT:  More than once.

25                    THE COURT:  Tell me in your own words how you shot

                                                                    NS

Proceedings

1   I   R██████ at that time and place.  You can talk to

2   Mr. DiDio before you answer.

3        (Defendant and counsel confer.)

4        THE DEFENDANT:  While I was walking across the

5   street, I fired shots at him.

6        THE COURT:  When you fired shots at L█████

7   R██████, did you intend to cause serious physical injury

8   to him?

9        THE DEFENDANT:  Yes.

10       THE COURT:  Any questions by the People,

11  Mr. Kosinski?

12       MR. KOSINSKI:  No.

13       The People would like to note the victim was shot

14  approximately five times, a nine-millimeter weapon was used

15  and approximately eight shell casings were recovered at the

16  scene where he was shot corroborating the defendant's

17  allocution.

18       THE COURT:  Thank you.

19       Mr. Petty, I have had a conference with your

20  lawyer and with the District Attorney, and I have agreed

21  upon the People's recommendation to sentence you to a

22  determinate term of ten years, that means ten straight

23  years with credit for the time already served.

24       In addition, you will be subjected to five years

25  post release supervision as the law requires.

Proceedings

1          Do you understand this?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Has anyone promised you anything else

4      to get you to enter into this guilty plea?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Has anyone threatened you or pressured

7      you to enter this guilty plea?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Are you guilty of having caused the

10     death of ███████ R███████ by shooting him as you just told

11     the Court?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Have you discussed with your lawyer,

14     Mr. DiDio, the giving up your right of appeal as a

15     condition of this plea and promised sentence?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Were you presented with a writing

18     giving up your right of appeal?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Did you review that writing along with

21     your lawyer before you signed it?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Are you giving up the right of appeal

24     freely and voluntarily?

25         THE DEFENDANT:  Yes, sir.

USAO_000097

Proceedings

1          THE COURT:  I have the document that I have been

2     referring to in my hand right now.  That is your signature,

3     Mr. Petty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  The record should reflect the

6     execution of the written waiver of appeal by defendant and

7     counsel in open court.

8          What is the People's recommendation as to this

9     plea and promised sentence?

10          MR. KOSINSKI:  The People at this time recommend

11     the acceptance of the plea and the recommended sentence of

12     ten years incarceration along with five years post release

13     supervision.

14          THE COURT:  Accordingly, the plea is satisfactory

15     to the Court.  Even though no jurors have been sworn,

16     everyone agrees to the declaration of a mistrial here.  Is

17     that correct?

18          MR. KOSINSKI:  Yes.

19          MR. DiDIO:  Yes, your Honor.

20          THE COURT:  Mistrial declared in light of the

21     disposition.  I will bring everyone in just to thank the

22     panel briefly for their service.

23          I want everyone to remain in place, please.  We

24     will arraign him on the second felony after I let the

25     jurors go.

Proceedings

1          (Whereupon, the prospective jurors enter the

2      courtroom.)

3          THE COURT:  I'm sorry to have kept you waiting for

4      approximately 45 minutes, but it was for a good purpose,

5      and that is since we reconvened, there has been a

6      disposition of this case.  There has been a resolution of

7      this case.  A jury trial will not be necessary any longer.

8          I do want to thank you before I discharge you from

9      service in this case that it would not have been concluded

10     were it not for your service.  This matter has been pending

11     in this court for two years and two months, and this was

12     the moment of truth.  However, before the moment of truth

13     came, there was a resolution of this case.

14         I know some of you may be very disappointed in not

15     having had the opportunity to serve for two weeks in this

16     murder case, but those are the fortunes of war, as we say.

17     I will send you back to Central Jury.  They may excuse you

18     from service, I don't know, but you are discharged from

19     this case with the thanks of the Court.

20         Thank you again.  Follow the officers, please.

21         (Jurors exit the courtroom.)

22         THE COURT:  Before we adjourn this for sentence,

23     arraign the defendant as a second violent felony offender.

24         THE COURT CLERK:  The District Attorney's office

25     has filed a statement of predicate felony conviction

NS

USAO_000099

Proceedings

1      alleging that you, Kenneth Petty, under predicate felon

2      indictment number 4521 of 1994 under the name of Kenneth

3      Petty; the date of plea was April 5, 1995; the crime

4      attempted rape in the first degree; place of conviction

5      Queens County; date of conviction sentence April 5, 1995,

6      the sentence -- one moment.

7           (Whereupon, an off-the-record discussion was

8      held.)

9           THE COURT: We will start all over.  Under this

10     predicate felony indictment number 4521 of 94, under the

11     name of Kenneth Petty, the date of plea was November 10,

12     1994; the crime was attempted rape in the first degree; the

13     place of conviction is Queens County; the date of sentence

14     April 5, 1995; the sentence was 1 1/2 to 4 1/2 years.

15          You may admit or deny that you are the person so

16     named.  You may also challenge any allegations made in the

17     statement, but you must specify the particular allegations

18     you wish to challenge.

19          Unchallenged allegations shall be deemed to be

20     admitted by you.  You may also challenge a predicate felony

21     conviction on the ground it was unconstitutionally

22     obtained.

23          Failure to make such a challenge constitutes a

24     waiver on your part of any allegations of

25     unconstitutionality.

NS

USAO_000100

Proceedings

1          Kenneth Petty, having been advised of your rights,

2    do you admit that you are the person so named in the

3    statement?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT CLERK:  Do you wish to challenge the

6    constitutionality of the statement?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT CLERK:  Thank you.

9          The defendant is arraigned as a predicate and

10    admits.

11          THE COURT:  Accordingly, he is adjudicated a

12    second violent felony offender for sentencing purposes.

13    Remand for sentence.

14          I am looking at March 23 at 2:00 P.M. for

15    sentence.

16          MR. DiDIO:  That's good.

17          MR. KOSINSKI:  That's fine.

18          THE COURT:  March 23, 2:00 P.M.

19          (Matter adjourned to March 23, 2006.)
          *    *    *    *    *    *    *    *
20          The foregoing is certified to be a true and
    accurate transcript of the original stenographic minutes
21    taken of this proceeding.

22          *Nancy Samms*
          _____
          Nancy Samms, SCR

23

24

25

NS

USAO_000101